# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL STEVEN HARRIS, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 18-CV-3086 |
| : | FILED |
| BERKS COUNTY SHERIFF : | JUL 2 6 2018 |
| DEPARTMENT, *et al.*, : | KATE BARKMAN, Clerk |
|     Defendants. : | By_____Dep. Clerk |

## MEMORANDUM

**BEETLESTONE, J.**                                                                                   JULY 26, 2018

      Plaintiff Daniel Steven Harris, an inmate currently incarcerated at the Berks County Jail System, has filed this civil action pursuant to 42 U.S.C. § 1983 against the Berks County Sheriff Department and Frank Cataldi, a Berks County Sheriff. He has also filed a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 1.) For the following reasons, the Court will grant Harris leave to proceed *in forma pauperis* and dismiss his Complaint.

## I.  FACTS

      In his Complaint, Harris states that on December 8, 2010, officers from the Berks County Sheriff's Department entered his home without a warrant. (Compl. at 4.)[1] The next day, they entered his home again without a warrant, "pointing guns." (*Id.*) The officers were led "by a Sgt. Sheriff Frank Cataldi." (*Id.*) Harris asked to see a warrant. (*Id.*) Instead, he was "grabbed and violently pushed onto [his] porch" by Cataldi. (*Id.*) Harris "lost [his] balance and fell on [his] stomach," and Cataldi "landed on [his] back and attempted to push [Harris's] left disabled arm behind [him]." (*Id.*) Harris noticed that he had a "partially broken middle right finger." (*Id.*)

---

[1] The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

Harris alleges that he "screamed as loud as [he] could" that he was not resisting. (*Id.* at 5.) An unnamed sheriff then "put his knee on the back of [Harris's] head and neck and used his weight to press down." (*Id.*) Harris was eventually "handcuffed behind [his] back, right arm extended to the left to relieve the pressure on [his] left shoulder because [his] left arm and shoulder [do not] rotate behind [him] naturally." (*Id.*) He heard one of the sheriff's call him "Jamal." (*Id.*) To prove his identity, Harris "directed the sheriff to [his] wallet." (*Id.*) Subsequently, Harris "was Tasered and ask[ed where] Jamal Turner was." (*Id.*) He contends that he was Tasered for 28 to 32 seconds. (*Id.*) Afterwards, Cataldi "immediately and painfully lifted" Harris, grabbing his handcuffed hands and "lifting them skyward." (*Id.*)

Harris alleges that the sheriffs then "drove and dropped [him] off at the Reading Hospital," where they left him alone in the care of the hospital staff. (*Id.* at 3.) A week later, on December 16, 2010, Harris was "falsely accused and charged with" aggravated assault and simple assault on the sheriffs, "among other charges." (*Id.* at 3, 8.) He was taken to see District Justice Yoch, where he was "given R.O.R. bail." (*Id.* at 3.) Public dockets reflect that Harris was charged with two counts of aggravated assault and one count each of simple assault, disorderly conduct engage in fighting, hinder apprehension/prosecution—harbor or conceal, and resisting arrest/other law enforcement. *Commonwealth v. Harris*, CP-06-CR-0000166-2011 (Berks Ct. Common Pleas). He was arraigned on the charges on January 31, 2011. *Id.* On January 20, 2012, Harris was found guilty of resisting arrest and was sentenced to 6-23 months of incarceration. *Id.* He was found not guilty of simple assault, the aggravated assault and disorderly conduct charges were dismissed, and the hindering apprehension/prosecution charge was withdrawn. *Id.*

As relief, Harris seeks $500,000.00 in damages for the Defendants' actions because they "destroyed the public trust and illegally use[d] the system to frame and illegally sentence Mr.

2

Harris." (Compl. at 7-8.) He also requests that Cataldi and the sheriff who Tasered him be "fired from their positions," and that all sheriffs who were present at the time of the incident be "held accountable for covering up violent illegal behavior of their peers." (*Id.* at 8.)

## II. STANDARD OF REVIEW

The Court will grant Harris leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action.[2] Accordingly, Harris's Complaint is subject to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013), *abrogated on other grounds by, Coleman v. Tollefson*, 135 S. Ct. 1759, 1763 (2015). As Harris is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

---

[2] However, because Harris is a prisoner, he will be obligated to pay the $350.00 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Harris's claims fail for the following reasons.

As noted above, Harris states that the Defendants "illegally use[d] the system to frame and illegally sentence" him. (Compl. at 8.) To the extent that Harris is challenging his conviction and sentence for resisting arrest, his claims are not cognizable in this action. "[T]o recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)- - if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). Therefore, to the extent Harris seeks to challenge his resisting arrest conviction and sentence, he may not do so in this § 1983 action because that conviction has not been invalidated.

Harris also appears to raise claims of illegal search and seizure, false arrest, and excessive force against the Defendants. As noted above, he contends that the Defendants illegally entered his home without a warrant on December 8 and 9, 2010, that they used excessive force against him on December 9, 2010, and that they falsely arrested him on or about December 16, 2010. Pennsylvania's two-year limitations period applies to these claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Harris's claims accrued when he "ha[d] a

4

complete and present cause of action, that is, when [he could] file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). Pursuant to the prison mailbox rule, a prisoner's complaint is considered filed at the time he or she hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Terrell v. Benfer*, 429 F. App'x 74, 75 n.1 (3d Cir. 2011) (per curiam).

Here, Harris's illegal search and seizure claims accrued on December 8 and 9, 2010, when the alleged illegal searches and seizure occurred. *See Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012) (concluding that statute of limitations began on date when plaintiff "indisputably knew about the alleged faults of search and seizure"). His excessive force claim accrued on December 9, 2010, when the alleged assault occurred. *See LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) (per curiam). His false arrest claim accrued on December 16, 2010, when he was arrested on the charges brought against him. *See Wallace*, 549 U.S. at 389-90 & n.3; *Singleton v. DA Philadelphia*, 411 F. App'x 470, 472 (3d Cir. 2011) (concluding that accrual of a claim for false arrest occurred on the date that the plaintiff "was arrested and charges were filed against him").[3] Thus, the limitations period applicable to these claims expired in 2012. Harris, however, did not file his Complaint until June 25, 2018, the date he says he gave it to prison authorities for mailing. (*See* Compl. at 10.) Harris's claims of illegal search and seizure, excessive force, and false arrest are, therefore, untimely by almost six (6) years.[4]

---

[3] Arguably, Harris's false arrest claim could have accrued, at the latest, on January 31, 2011, when he was arraigned on the charges. *See Wallace*, 549 U.S. at 397 (noting that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process"). In any event, Harris's Complaint is clearly untimely using either date as the date of accrual.

[4] Nothing in the Complaint suggests that any tolling would apply to render Harris's Complaint timely filed.

5

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Harris leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Any claims challenging Harris's conviction and sentence for resisting arrest, which are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), will be dismissed without prejudice to Harris's right to pursue them in a new lawsuit if and when his convictions are invalidated. Harris's remaining claims will be dismissed with prejudice. Harris will not be permitted to file an amended complaint, as he cannot cure the defects in his claims. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). An appropriate Order follows.

BY THE COURT:

_____
WENDY BEETLESTONE, J.